IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT HUGHES, | : | |
| | : | |
|     Plaintiff, | : | CIVIL ACTION NO. 3:04-cv-1191 |
| | : | |
|     v. | : | |
| | : | |
| CORPORAL JOSEPH SARKIS, | : | JUDGE CONABOY |
| sued in his individual | : | |
| capacity, | : | |
| | : | |
|     Defendant. | : | |

_____

MEMORANDUM and ORDER

Before the Court is Corporal Joseph Sarkis' "(Defendant")
Motion for Summary Judgment, (Doc. 46), against Robert Hughes
("Plaintiff").  In his Amended Complaint, (Doc. 8), Plaintiff seeks
relief pursuant to 42 U.S.C. § 1983.

Plaintiff alleges that Defendant violated his First and
Fourteenth Amendment rights under the United States Constitution.
The Complaint was initially filed by Plaintiff in Pennsylvania
state court and was removed by the original Defendants to Federal
Court.[1]

After the case was removed to Federal Court by Defendants,
Plaintiff filed a First Amended Complaint alleging the same
violations.  (Doc. 8).  On September 8, 2004, this Court granted

_____

[1] The original defendants in this action were Old Forge
Borough and Francis Avvisato, sued in his official capacity as
Police Chief of the Old Forge Police Department, and Corporal
Joseph Sarkis.  On March 15, 2005, this Court was notified that Old
Forge Borough and Defendant Avvisato reached a settlement with
Plaintiff.  (Doc. 39).  Corporal Sarkis is the only remaining
defendant in this action.

Defendants' Motion to Dismiss the First Amended Complaint based on Federal Rule of Civil Procedure 12(b)(6).  (Doc. 23).  In dismissing Plaintiff's First Amended Complaint, this Court held that the dismissal of the Plaintiff's first Complaint, (previously filed in the federal Court in Hughes I), precluded Plaintiff from filing the same action in the state court.

Plaintiff moved for Reconsideration on September 21, 2004. (Doc. 35).  The Court held oral argument on Wednesday, January 12, 2005.  On January 28, 2005, this Court granted Plaintiff's Motion for Reconsideration.  (Doc. 34).  On September 16, 2005, Defendant filed this Motion for Summary Judgement.  (Doc. 46).

The motion has been fully briefed and is now ripe for disposition.  Based on the discussion below, Defendant's Motion for Summary Judgment is GRANTED.

I.   FACTUAL BACKGROUND[2]

In 1998, Plaintiff complained at an Old Forge Borough Council public meeting about unlawful activities conducted by certain officials.  Specifically, he argued that Old Forge was running unlicensed, unregistered vehicles as officially marked police cruisers.  (Doc. 7, at ¶ 11).

In May 1998, Plaintiff obtained copies of records from the Pennsylvania Department of Transportation that he said confirmed

---

[2] The facts are primarily taken from Defendant Sarkis' Brief in Support of Motion to Dismiss.  (Doc. 7).  Also, we note that this case presents a peculiar factual background.

Old Forge was running unlicenced, unregistered vehicles as officially marked police cruisers.  These documents were brought to the attention of the Old Forge Borough Council at a public meeting.  Shortly thereafter, Plaintiff was arrested and charged with five (5) counts of violating 18 Pa.C.S. § 4911(a)(1) for tampering with public records or information.  The charges were subsequently dropped by the District Attorney.  (Id. at ¶¶ 13-15).

In June of 1998, Hughes was a candidate for the Old Forge Borough Council.  He campaigned to "clean up Old Forge from the prevalent nude bars, escort and massage establishments that were preying on the community."  (Id. at ¶ 16).  He spoke out against these clubs and complained that some were not zoned properly.  (Id. at ¶¶ 17-19). As a result, Old Forge shut down one of the clubs.  (Id. at ¶ 17).

Soon thereafter, Plaintiff was charged with the rape of Tara Blumenfeld ("Blumenfeld"), a "nude dancer and pornographic model." Hughes asserts that Avvisato and Defendant maliciously and vindictively conspired to fabricate these charges which were eventually dismissed. (Id. at ¶¶ 20-22).  Plaintiff argues that "Defendants knew or should have known there was no probable cause to bring any of the charges against Hughes," nevertheless, they brought these charges in retaliation against Hughes for exercising his First Amendment rights.  (Id. at ¶¶ 23-24).

Additionally, Plaintiff alleges that Avvisato and Defendant

3

conspired with Detective Joseph Jordan and Assistant District Attorney Eugene Talerico of the Lackawanna County District Attorney's Office to conduct illegal wire taps of conversations between Plaintiff and certain confidential informants. (Id. at ¶ 25). According to Plaintiff, this amounted to a violation of Pennsylvania law, a violation of Hughes's First and Fourth Amendment rights, and subjected Hughes to vindictive prosecution.

Also, Plaintiff asserts that Avvisato and Defendant conspired with Wendy Maopolski, a Scranton Tribune reporter, in an effort to slander and defame Hughes through published articles for the purpose of interfering with his campaign for public office. (Id. at ¶ 26).

II.   PROCEDURAL BACKGROUND

On April 26, 2004, Plaintiff filed a § 1983 claim in the Court of Common Pleas for Lackawanna County. The original Defendants removed the action to this Court.[3]

On June 18, and again on June 30, 2004, the original Defendants sought to dismiss the Complaint on preclusion grounds based on our decision in Hughes I.[4] (Docs. 3 & 6). On July 7,

---

[3] During all times relevant to the allegations made in this action, Francis Avvisato was Chief of the Old Forge Police Department.

[4] On June 13, 2000, Plaintiff filed a Writ of Summons in the Court of Common Pleas for Lackawanna County.
October 27, 2003, Plaintiff filed a Complaint in this Court. On February 17, 2004, we dismissed the claim as untimely. According to our opinion in Hughes I, filing the writ of summons in

2004, Plaintiff filed an Amended Complaint.  (Doc. 8).  On

September 8, 2004, this Court denied the Rule 19 Motion to Dismiss,

but granted the Rule 12(b)(6) Motion to Dismiss.  (Doc. 23).

On September 21, 2004, Plaintiff filed his Motion for

Reconsideration.  (Doc. 24).

This Court held oral argument on Wednesday, January 12, 2005.

On January 28, 2005, this Court granted Plaintiff's Motion for

Reconsideration and ordered that the case be reopened.  (Doc. 34).

On September 16, 2005, Defendant Sarkis filed the instant

Motion for Summary Judgment.  (Doc. 46).

III. <u>DISCUSSION</u>

Defendant raises five issues in his Motion for Summary

Judgment.  (Doc. 46).  However, in Plaintiff's brief in opposition

to Defendant's Motion for Summary Judgment, Plaintiff concedes that

his Fourth Amendment claims are not viable in this action.  (Doc.

52, ¶ 23).  Because Plaintiff concedes that his Fourth Amendment

claims should be dismissed, we will not discuss them here.

Therefore, the only remaining issues before this Court are

Plaintiff's conspiracy and First Amendment claims and the qualified

immunity defense raised by Defendant.[5]

state court did not toll the statute of limitation in Federal
Court.  Plaintiff did not appeal this Court's dismissal.

   [5] To the extent that any of the pleadings can be seen to make
out state law claims, we do not claim jurisdiction because all of
Plaintiff's federal claims are dismissed.

1.    <u>Summary Judgment Standard</u>

In our analysis of this matter we keep in mind the various cases that direct us regarding summary judgment.  A motion for summary judgment can be a very powerful motion.  It is a legal method of totally resolving a case without a trial based on a review of pleadings and submissions of the parties.  Granting summary judgment is appropriate in cases where there are no significant facts in dispute.  Because of the finality of granting a summary judgment motion, we must carefully examine the case and supporting documents along with the submissions from the Plaintiff who hopes to keep his case alive.  Federal Rule 56 is a mechanism for "assess[ing] the proof in order to see whether there is a genuine need for trial."  Fed.R.Civ.P. 56(e) advisory committee's notes (amended 1963).

Summary judgment is somewhat controversial and can be seen as upsetting the precarious balance between expediency and the preservation of our Seventh Amendment[6] right to jury trial.  Thus, we are vigilant and careful not to use it to preclude a party's right to trial or as a vehicle to simply move the case more quickly through the judicial system.

We follow considerable guidance in determining whether summary

---

[6] U.S. Const. Amend. VII provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the rights of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

judgment should be granted.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed.R.Civ.P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8, 106 S.Ct. 2505 (1986) (emphasis in original).

These rules make it clear that in order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This instructs us that a fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the law applicable to the case.  Id. at 248; Levendos v. Stern Entertainment Inc., 860 F.2d 1227, 1233 (3d Cir. 1988).  We are further instructed that an issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party.  Anderson, 477 U.S. at 257; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586, 106 S.Ct. 1348 (1986); Hankins v. Temple University, 829

F.2d 437, 440 (3d Cir. 1987); Equimark Commercial Finance Co. v.

C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

Under this regimen that we follow, the Court is required to

view the evidence in the light most favorable to the non-moving

party.  Consistent with this principle, the non-movant's evidence

must be accepted as true and all reasonable inferences must be

drawn in the non-movant's favor.  J.F. Feeser, Inc. v. Serv-A-

Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990).  However, the

non-moving party may not rest on the bare allegations contained in

his or her pleadings.

The non-moving party is required by Federal Rule of Civil

Procedure 56(e)[7] to go beyond the pleadings by way of affidavits,

depositions, answers to interrogatories or the like in order to

demonstrate specific material facts which give rise to a genuine

issue.  Celotex Corporation v. Catrett, 477 U.S. 317, 324, 106

S.Ct. 2548 (1986).  When Rule 56(e) shifts the burden of proof to

the non-moving party, that party must produce evidence to show the

---

[7]  In relevant part, Rule 56(e) states:

When a motion for summary judgment is made and supported as
provided in this rule, an adverse party may not rest upon
the mere allegations or denials of the adverse party's
pleading, but the adverse party's response, by affidavits
or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for
trial.  If the adverse party does not so respond, summary
judgment, if appropriate, shall be entered against the
adverse party.

existence of every element essential to its case which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

But when a full review of documents submitted to the Court (such as depositions of the parties in this case) clearly demonstrates the Plaintiffs claims are based merely on speculation and conjecture, there is no need for a trial and the parties should be spared the time and expense of further litigation.

2.    Is Defendant Entitled to Judgment As a Matter of Law on Plaintiff's Civil Conspiracy Claim?

Defendant argues that Plaintiff makes only conclusory statements regarding Defendant's involvement in the alleged conspiracy against him, (Doc. 47 at ¶ 26), and has failed to set forth the necessary elements for a successful conspiracy charge. Id.

Defendant's account of Plaintiff's conspiracy allegations is accurate.  Even giving Plaintiff every possible benefit of the doubt does not save his claim.  His conspiracy argument remains incoherent and more importantly, insufficient.

A successful conspiracy claim requires a plaintiff to show (1) a conspiracy - that the defendant had an agreement with at least one other person and anticipated or caused something to be done in furtherance of the agreement to violate plaintiff's civil rights; (2) that the agreement was to deprive plaintiff of a protected right; (3) an act in furtherance of the conspiracy; and (4) an

9

injury to person or property or deprivation of rights.  <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 103-104 (1971); <u>United Brotherhood of Carpenters and Joinders of America, Local 610, AFL-CIO v. Scott</u>, 463 U.S. 825, 828-829 (1983).

A conspiracy claim requires a plaintiff to plead with some degree of detail.  In the Third Circuit, a "mere general allegation of conspiracy is insufficient."  <u>Kalmanovitz v. G.Heileman Brewing Co.</u>, 595 F.Supp. 1385, 1400 (D.Del.1984).  "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient."  <u>Kalmanovitz</u>, supra, 595 F.Supp. at 1401.  Here, Defendant argues that Plaintiff fails to allege who was involved in the conspiracy, when it occurred, and the actions the alleged conspirators took as steps in achieving that purpose. (Doc. 47 at ¶ 26).

A careful review of Plaintiff's deposition does little to illuminate any specific allegations against Defendant.

At Plaintiff's deposition, the following dialogue took place between Defense counsel and Plaintiff:

"Q: You say again defendants plural engaged in the punishment of Hughes because he engaged in protected speech.  What conduct did Corporal Sarkis engage in?

A: What conduct did he engage in?

Q: Yes.

10

A: The conspiracy with Avvisato.

Q: And your evidence of a conspiracy with Avvisato is what?

A: Because I can't understand that if a person brings documents to City Council and shows that the cars are illegal, in other words, City Council should recommend that person for doing them a favor, yet in the meantime the Chief runs to Corporal Sarkis and he has me arrested on falsifying documents.  That's conspiracy in my book.

Q: Okay.  So because Avvisato took information to Sarkis there was a conspiracy?

A: Yeah, for the simple fact is even in Corporal Sarkis' Complaint he said he appeared at Borough Council meetings. So, in other words, Corporal Sarkis knew I brought the documents to the Borough Council meeting, so why did he proceed with the charges?"

Hughes' deposition, page 79, lines 4-11.

In his deposition, Plaintiff takes issue with Defendant's presence at a court hearing relating to charges against Plaintiff that were ultimately dropped by the district Attorney's office. Plaintiff attributes Defendant's presence in court to the alleged conspiracy.  The following dialogue took place between defense counsel and Plaintiff:

"Q: Was Corporal Sarkis at your hearing for the rape charge?

A: Not for the preliminary hearing but for a deal that was supposed to be made through Judge Corbett's chambers, he was in the courtroom.  I can't understand why.

Q: Because he didn't bring those charges?

A: No.  He has nothing to do with them.

Q: His presence there suggested he at least knew about the charges?

A: Yes.  You want my inkling why he was there.

11

Q: Sure.

A: To give information to Avvisato."

Hughes' deposition, pages 37, lines 16-25 & page 38, lines 1-3.

Even Plaintiff's own counsel can do little to explain the conspiracy charge.  In attempting to clarify the conspiracy charge for Defense counsel, Plaintiff's counsel states that:

> "[i]n terms of the issue of conspiracy the issue is that Sarkis has what we understand to be a long relationship with Chief Avvisato because Avvisato used to be on the State Police ...and further that the reason Avvisato contacted Sarkis was because of that long-term relationship...going after Mr. Hughes for tampering with public records, which was really a ruse to retaliate for having embarrassed Avvisatto in front of the Council."

Hughes' deposition, page 41, lines 12-22.

The conspiracy allegations made by Plaintiff appear to be speculative at best.  Neither Plaintiff's own words in his deposition, the explanation provided by Plaintiff's counsel, nor the formal Complaint achieve the threshold necessary to bring a viable conspiracy claim.

The submissions to the Court show that Avvisato, in his role as Police Chief, requested the Pennsylvania State Police to investigate Plaintiff's conduct in acquiring certain information from the Pennsylvania state authorities regarding borough vehicles. Defendant, Sarkis, a member of the Pennsylvania State Police, was assigned to the investigation.  There is nothing in the record to indicate that Defendant, Sarkis conspired with anyone or did

12

anything beyond a normal investigation in preparing his report and suggesting charges against the Plaintiff.  The fact that the Lackawanna County District Attorney determined at a later date not to proceed against the Plaintiff with the charges is simply irrelevant in this context.

The Plaintiffs conspiracy claim will be dismissed.

3.   Is Defendant Entitled to Summary Judgment on the First Amendment Retaliation Claim?

Plaintiff claims that Defendant filed criminal charges against him in retaliation for reporting misconduct of the Old Forge Borough police at an Old Forge Borough Council meeting.  (Doc. 53 at ¶ 3).

To prevail on a retaliation claim, Plaintiff must first establish that he engaged in an activity protected by the First Amendment.  Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir.1997).  If Plaintiff establishes that he engaged in a protected First Amendment activity, he must then show that it was a substantial or motivating factor in the retaliatory action.  Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir.1996).  The third prong of the three-part test allows defendants to escape liability if they can demonstrate that they would have acted the same even if Plaintiff had not spoken out.  Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir.2001).  For purposes of this motion, Defendant concedes that Plaintiff meets the first prong of the three-part test because the proper registration of police vehicles is a matter

13

of public concern.  (Doc. 47 at ¶ 10)  However, Defendant argues

that Plaintiffs' retaliation claim fails in the second prong.  <u>Id.</u>

Defendant claims that Plaintiff's reporting at the Old Forge

Council meeting was not a substantial and motivating factor in

Defendant's decision to file charges against Plaintiff.  (Id. at ¶

11).  Defendant did not attend the council meeting where Plaintiff

made his complaints and claims that he was unaware of Plaintiff's

complaints until he was assigned to investigate why Plaintiff had

the public records presented at that meeting.  <u>Id.</u>  Therefore,

Defendant claims that he filed the criminal complaint because he

believed Plaintiff had obtained the records illegally and not in

retaliation for Plaintiff's speech.  <u>Id.</u>

Plaintiff argues that Defendant embarked on an "investigation"

of Plaintiff the day after he spoke at the Old Forge Council

meeting.  (Doc. )  Plaintiff alleges that Defendant's investigation

of him was the result of Defendant's mistaken belief that Plaintiff

did not legally obtain the documents from PennDOT.  <u>Id.</u>  Plaintiff

goes into great detail regarding the form used at PennDOT to

request the vehicle records and the various options which were

available on the Affidavit of Intended Use.  (Doc. 52 at ¶ 13).  It

is undisputed that Plaintiff selected item number one which states:

"For use by any government agency, including any court or law or

law enforcement agency, in carrying out its functions, or any

private person or entity acting on behalf of a Federal, State or

14

local agency in carrying out its functions." (Id. at ¶ 35).

The parties disagree as to whether or not item number one on
the Affidavit accurately describes Plaintiff's purpose in
requesting the documents.  Plaintiff contends that item number one
was appropriate because Plaintiff's purpose in requesting the
documents was for use by the Old Forge Borough, a local
governmental agency.  (Id. at ¶ 36).  Furthermore, Plaintiff claims
that his activity in obtaining the vehicle title histories was
"inextricably linked to his protected First Amendment activity of
seeking to redress his grievances with the Old Forge Borough
police."  (Id. at ¶ 41).

Defendant cited Plaintiff's improper use of the Penn DOT form
in his affidavit of probable cause.  (Doc. 47 at ¶ 13).  According
to Defendant, Plaintiff was not carrying out the function of a
government agency when filling out the Penn DOT forms and therefore
violated Section 4911(a)(1) of the law for tampering with public
records.  Id.  Defendant claims that Plaintiff knowingly made a
false entry in, or false alteration of, a record document of thing
belonging to, or received or kept by, the government for
information or record, or required by law to be kept by others for
information of the government.  Id.

The Defendant properly argues that the presence of probable
cause rebuts Plaintiff's claim that Defendant acted in retaliation
against Plaintiff.  (Id. at ¶ 4).  Thus, the question for this
Court is whether Plaintiff has presented any genuine issue of

15

material fact as to whether or not Defendant had probable cause.
Montgomery v. De Simone, 159 F.3d 120 (3d Cir.1998).

Plaintiff fails to present any issues of material fact
relating to whether or not Defendant had probable cause.  Rather,
Plaintiff makes broad accusations and repeatedly refers to what
Defendant "knew" about Plaintiff's actual intent in requesting the
documents.  (Doc. 52)  For example, Plaintiff claims that he
properly represented the purpose of requesting the Penn DOT
documents and that Defendant "knew this but deliberately misstated
Hughes' representation to PennDOT in his affidavit of probable
cause."  (Id. at ¶ 37).  These unsubstantiated accusations made by
Plaintiff fail to rise to the level necessary to make out an issue
of material fact.

Accordingly, it is impossible to say that there was any
chilling of Plaintiff's First Amendment rights in this case.
Plaintiff has failed to raise issues of material fact and we agree
with Defendant that Plaintiff's retaliation claim should be
dismissed.

    4.    Is Defendant Entitled to Summary Judgment Based on
          Qualified Immunity?

Defendant claims he is entitled to qualified immunity from
Plaintiff's claims because of his position as a public official.
(Doc. 47 at ¶ 32.)

"[G]overnment officials performing discretionary functions
generally are shielded from liability for civil damages insofar as

16

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Brown, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

The first inquiry is whether "the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right."  Curley v. Klem, 298 F.3d 271, 277 (3d Cir.2002).  If so, the next inquiry is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct.2151, 150 L.Ed.2d 272 (2001)).

In the instant case, Plaintiff has failed to show evidence of wrongdoing by Defendant.  Plaintiff addresses Defendant's claim of qualified immunity only by stating that there are "ample triable issues raised by the record concerning both Sarkis' claim for qualified immunity and his contention that he was not involved in a conspiracy to compel the Court to deny Sarkis' motion and set this case for trial."  (Doc. 52 at ¶ 48).  Plaintiff's claims are simply not enough to rebut Defendant's claim of qualified immunity. Therefore, we agree with Defendant's claim that he should be entitled to qualified immunity against Plaintiff's claims.

17

IV.   <u>CONCLUSION</u>

      Proceeding to jury trial is a course of action reserved for cases which present triable issues.  It would be improper to burden a jury when there is no factual background to support the claims brought by a potential plaintiff.  Here, Plaintiff has failed to present any viable claim that should proceed to trial.

      Defendant's motion for Summary Judgment is GRANTED.  An appropriate Order follows.

DATE: November 18, 2005          <u>S/Richard P. Conaboy</u>
                                Richard P. Conaboy
                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
ROBERT HUGHES,                      :
                                    :
     Plaintiff,                     :     CIVIL ACTION NO. 3:04-cv-1191
                                    :
     v.                             :
                                    :
CORPORAL JOSEPH SARKIS,             :     JUDGE CONABOY
sued in his individual              :
capacity,                           :
                                    :
     Defendant.                     :
```
_____

<u>ORDER</u>

Now, this 18th  day of November, it is ordered as follows:


1.  Defendant's Motion for Summary Judgment, (Doc. 46), is GRANTED; and

2.  The clerk is directed to close this case.



DATE: November 18, 2005          S/Richard P. Conaboy
                                 Richard P. Conaboy
                                 United States District Judge